**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| BRANDON O.,[1] | : | Case No.  1:24-cv-00699 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Brandon O. brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the Administrative Record (Doc. #7).

I.    **Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1),

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.  *See also* S.D. Ohio General Rule 22-01.

1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on March 25, 2022, alleging disability beginning on February 11, 2022, due to PTSD, anxiety disorder, high blood pressure, acid reflux, and problems with his stomach, hand/wrist/arm, back, neck, knee, and elbow.  (Doc. #7-6, *PageID* #353).  After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Noceeba Southern. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]  The ALJ reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since February 11, 2022, the alleged onset date. |
| Step 2: | He has the following severe impairments: multilevel degenerative disc disease of the lumbar spine, inflammatory arthritis, residual effects of right knee arthroscopy, affective disorder, and substance addiction disorder. |
| Step 3: | He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "medium work… except he can frequently climb ramps and stairs; he can occasionally climb ladders, ropes, or scaffolds; he is able to perform unlimited balancing, but he is limited to frequent stooping, crouching, and he is limited to occasional kneeling and crawling. [Plaintiff] is limited to simple, routine tasks, and few detailed instructions. |

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

> He is able to complete tasks with no fast pace or strict production demands. He would be off task up to 5% of the workday. [He] would be able to tolerate occasional but superficial interactions with coworkers and supervisors. He should avoid any tandem work and should avoid all interaction with the public."
>
> Plaintiff is capable of performing his past relevant work as a cook. This work does not require the performance of work-related activities precluded by his RFC.

Step 5: Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. #7-2, *PageID* #s 53-61).  Based on these findings, the ALJ concluded that Plaintiff has not been disabled since February 11, 2022.  *Id.* at 61.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 50-61), Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #12), and Plaintiff's Reply (Doc. #13).  To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In his Statement of Errors, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ's residual functional capacity (RFC) determination was not substantially supported by the record. (Doc. #10, *PageID* #s 1434–38). Specifically, Plaintiff argues that the ALJ erred in evaluating the medical source opinion provided by nurse practitioner Jennifer Strine.[3] *Id.* Second, Plaintiff argues that the ALJ erred by relying on the opinions of the state agency reviewing physicians who had no opportunity to review probative evidence in the case record, and by failing to provide an accurate and logical bridge from the evidence to the RFC assessment. *Id.* at 1438–43. In response, the Commissioner maintains that the ALJ reasonably considered the opinions in the record pursuant to the regulations, including the opinion of nurse practitioner Strine. (Doc. #12, *PageID* #s 1450–55).

---

[3] Ms. Strine's name is listed as "Strine" in the Statement of Errors and "Stone" in the ALJ's decision. Based on a review of her opinion, the provider's name is "Strine."

4

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Under regulations introduced by the Social Security Administration in 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." *See* 20 C.F.R. § 404.1520c(a). Instead, the regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." § 404.1520c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . ." § 404.1520c(c)(2).

Because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 404.1520c(b)(2); *Dayna S. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.). This analysis does not "not require those explanations to contain a specific level of detail, but instead contemplate that the appropriate level of articulation will necessarily depend on the unique

circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3834, 2023 WL 3764304, at *20 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal quotations omitted). However, "it is the obligation of the ALJ in the first instance to show his or her work, i.e., to explain in detail how the factors actually were applied in each case, to each medical source." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-cv-129, 2022 WL 4484603, at *11–12 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 2021 WL 3702170, at *6 (E.D. Mich. 2021)).

Consistent with the regulations that pre-dated the 2017 changes, an ALJ is still required to "provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-cv-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)).

In this case, Plaintiff alleges that ALJ Southern erred in evaluating the assessment from treating nurse practitioner Strine. (Doc. #10, *PageID* #1434). Strine opined that Plaintiff had moderate, marked, and extreme limitations in a variety of mental functioning areas and would miss work more than four times per month due to his mental impairments. (Doc. #7-7, *PageID* #s 483–85). Specifically, Strine found that Plaintiff had moderate limitations in his ability to remember locations and work-like procedures, his ability to understand and remember very short and simple

instructions, and his ability to understand and remember detailed instructions. *Id.* at 483. Strine explained that, "[d]epending on the patient's level of symptom exacerbation, as well as which condition(s) are impacted . . ., patient cannot recall words or instructions when asked to repeat them." *Id.*

Strine also found Plaintiff had moderate limitations regarding his ability to carry out very short and simple instructions; his ability to perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerations; his ability to sustain an ordinary routine without special supervision; his ability to make simple work-relation decisions; and his ability to perform at a consistent pace with a standard number. *Id.* at 484–85. Plaintiff had marked limitations in his ability to carry out detailed instructions; his ability to maintain attention and concentration for extended periods; his ability to complete a normal workday without interruptions from psychologically based symptoms; and his ability to complete a normal workweek without interruptions from psychologically based symptoms—according to Strine's findings. *Id.*

Strine opined that Plaintiff had extreme limitations regarding his ability to work in coordination with or in proximity to others without being distracted by them. *Id.* at 484. Strine indicated that, in her professional opinion, Plaintiff would likely have four or more absences in an average month. *Id.* Strine further states that Plaintiff is "easily overwhelmed by external stimuli and finds interpersonal relationships to be quite difficult due to his general mistrust towards most people stemming from PTSD." *Id.* Additionally, Strine's notes indicate that, especially when Plaintiff is experiencing bouts of mania" he "would most likely be unable to perform job duties as a result of decreased sleep, flight of ideas/racing thoughts, and high irritability." *Id.*

7

Strine indicated Plaintiff had moderate limitations regarding his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness as well as marked limitations regarding his ability to ask simple questions or request assistance and his ability to accept instruction and respond appropriately to criticism from supervisors. *Id.* Strine also found Plaintiff had extreme limitations regarding his ability to interact appropriately with the general public and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* In describing the medical findings that contribute to her assessment of Plaintiff's limitations, Strine explains that Plaintiff is unable to go to the grocery store or bank when his symptoms are exacerbated and that determining employment prospects is difficult due to the "general concern that he could become . . . angry and act/speak-out . . . ." *Id.*

To further support her findings, Strine indicated she had treated Plaintiff since November 2022 and that the limitations and restrictions outlined in the Mental Impairment Questionnaire had existed since "childhood/adolescence due to traumatic events of the past, exacerbated by TBIs and history of substance abuse." *Id.* at 485.

In reviewing Ms. Strine's opinion, ALJ Southern found it was "mostly unpersuasive." (Doc. #7-2, *PageID* #58). ALJ Southern states that the "moderate to marked limitations are supported by reference to the claimant's stress and anxiety from PTSD . . ." *Id.* However, ALJ Southern explained that, given Plaintiff's good work history, it appears he was able to work for many years despite his symptoms. *Id.* The ALJ reasoned that, with this, and with no indication of recent exacerbation, the record instead indicated that Plaintiff is less limited than Strine's findings suggest. *Id.* The ALJ found that, overall, the marked limitations were not consistent with the

evidence—including that Plaintiff's cognition, thought process, insight, and judgment were intact, and Plaintiff's mood and affect throughout the period at issue were largely normal. *Id.* (citing Doc. #7-7, *PageID* #s 438, 475, 499, 530, 533, 537).

As Plaintiff correctly observed, the ALJ erred in failing to address the supportability factor, as required by 20 C.F.R. § 404.1520c(b)(2), when evaluating the persuasiveness of treating nurse practitioner Strine's opinion. *See* 20 C.F.R. § 404.1520c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision.") (emphasis added). While the ALJ touches on consistency with the overall record, she fails to evaluate Strine's use of relevant, objective medical evidence or the processes Strine used to support her findings. Further, while the ALJ does state that the moderate to marked limitations "are supported by reference," the mere use of the word "support" does not rise to the required "minimum level of articulation"; the ALJ must show her work by explaining, in detail, how the factors were applied when making her determinations. *Scott K.*, 2022 WL 4484603, at *11–12 (citing *Hardy*, 2021 WL 3702170, at *6); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court."). The ALJ's failure to explain his analysis of the supportability of treating nurse practitioner Strine's opinions, as mandated by 20 C.F.R. § 404.1520c(b)(2), constitutes error. 20 C.F.R. § 404.1520c(b)(2); *see Warren I*, 2021 WL 860506, at *8 ("An ALJ must "set forth a 'minimum level of articulation'" as to how she considered the supportability and consistency factors for a medical's source's opinion.").

Furthermore, ALJ Southern takes issue with Strine's characterization of Plaintiff's moderate to marked limitations while wholly ignoring Strine's account of Plaintiff's extreme limitations. (Doc. #7-2, *PageID* #58). The ALJ's findings are also devoid of any mention of Strine's contention that Plaintiff's trauma-related limitations from childhood and adolescence were exacerbated by traumatic brain injuries and a history of substance abuse. *Id.* (referencing Doc. #7-7, *PageID* #485). An ALJ is not required to adopt a medical opinion verbatim. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute [her] opinion for that of a physician, [she] is not required to recite the medical opinion of a physician verbatim in [her] residual functional capacity finding."); *Mabry-Schlicher v. Comm'r of Soc. Sec.*, 2025 WL 1604376, ¶ 5 (6th Cir. 2025). However, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Brittany S. v. Comm'r of Soc. Sec.*, No. 2:25-cv-00311, 2026 WL 456732, at *10 (S.D. Ohio Feb. 18, 2026) (Gentry, M.J.) (quoting Social Security Ruling (SSR) 96-8p, 1996 SSR LEXIS 5, at *7 (S.S.A. July 2, 1996)). With regards to Strine's opinion, the ALJ has failed to do either. More simply, ALJ Southern's determination that Strine's opinions were unpersuasive, given the lack of supportability assessment and failure to meaningfully address certain limitations, failed to "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (Lioi, D.J.) (referencing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–46 (6th Cir. 2004)). Therefore, the ALJ reversibly

erred.[4]

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

is lacking. However, Plaintiff is entitled to a remand to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above.  On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT:**

1.  Plaintiff's Statement of Errors (Doc. #10) is **GRANTED;**

2.  The Commissioner's non-disability finding is vacated;

3.  No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

3.  This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4.  The case is terminated on the Court's docket.

March 19, 2026                                    *s/Peter B. Silvain, Jr.*
                                                  Peter B. Silvain, Jr.
                                                  United States Magistrate Judge

12